**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFF SAIDI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-4170** |
| | : | |
| **TROOPER BIJAN RASTEGARPANAH** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                    **December 13, 2024**

A local used car dealer seeks relief based on his version of facts warranting our further study. A Pennsylvania state trooper arrested this local used car dealer twice in a couple months in October and December 2020. The trooper first arrested the car dealer and sought $600,000 cash bail from an unidentified Montgomery County judge resulting in the car dealer spending two weeks in solitary confinement awaiting his preliminary hearing. The trooper also seized over $78,000 of the car dealer's money. A Montgomery County judge released the car dealer at the preliminary hearing two weeks later in October 2020. The same state trooper turned around and arrested the car dealer six weeks later but took him this time to a Dauphin County judge ninety minutes away from the alleged conduct. The Dauphin County judge imposed reasonable bail and the car dealer went home until his Dauphin County preliminary hearing. The state trooper then dropped the Dauphin County charges the day before the preliminary hearing. But the Commonwealth then added one of the dropped Dauphin County charges to the ongoing Montgomery County matter along with a new summary offense of operating a car dealership on a Sunday. The car dealer finally got his $78,000 back. The Commonwealth dropped the original Montgomery County charges and the car dealer pleaded guilty to the one charge transferred from Dauphin County and the summary charge for operating a car dealership on a Sunday.

The car dealer belatedly sued in August 2024 based on his sworn understanding of the facts. Something is amiss here. We are relying on pro se allegations against the trooper, the Commonwealth, and the Pennsylvania State Police. The state actors moved to dismiss all claims. They are partially correct, but the car dealer may proceed on his timely malicious prosecution civil rights claims under the Fourth Amendment for the state trooper's conduct in Montgomery and Dauphin Counties. We dismiss with prejudice the claims against the Commonwealth, the State Police, and the state trooper in his official capacity under the Eleventh Amendment. We must also dismiss with prejudice the car dealer's Fourteenth Amendment malicious prosecution claims, his civil rights false arrest and false imprisonment claims, and his state law claims. Discovery will inform us now.

## I.    Alleged pro se facts[1]

Montgomery County resident Jeff Saidi owns a used car dealership in Norristown, Pennsylvania.[2] Bijan Rastegarpanah is a State Trooper employed by the Commonwealth working with the Pennsylvania State Police who arrested Mr. Saidi two different times a couple of months apart in 2020.[3]

### *Trooper Rastegarpanah arrests Mr. Saidi on October 1, 2020 in Montgomery County.*

Pennsylvania State Trooper Bijan Rastegarpanah arrested Mr. Saidi in Montgomery County on October 1, 2020 for forgery, perjury, tampering with public records, and "id-writing."[4] Trooper Rastegarpanah raided two of Mr. Saidi's residences in Plymouth Meeting and his used car business in Norristown.[5] Trooper Rastegarpanah requested a cash bail of $600,000 before an unpleaded judge.[6] Mr. Saidi apparently did not have the cash for bail, so state actors held Mr. Saidi in solitary confinement at the Montgomery County Correctional Facility for two weeks until his

preliminary hearing on October 14, 2020.[7] Trooper Rastegarpanah also seized over $78,000 from Mr. Saidi's business checking accounts six days after the October 14 preliminary hearing.[8]

Trooper Rastegarpanah withdrew one of the felony charges at the October 14 preliminary hearing.[9] The unidentified judge held the remaining charges for trial, lowered Mr. Saidi's bail to $50,000, and ordered him released.[10]

### Trooper Rastegarpanah arrests Mr. Saidi on December 1, 2020 but now charges him in Dauphin County for conduct occurring in Montgomery County.

Trooper Rastegarpanah did not stop there. He waited six weeks or so and again arrested Mr. Saidi on December 1, 2020 for receiving stolen property.[11] But this time he sought to prosecute him outside of Montgomery County. Trooper Rastegarpanah inexplicably transported Mr. Saidi from the police station in Philadelphia to a magisterial district court in Dauphin County ninety minutes away.[12] Trooper Rastegarpanah charged Mr. Saidi in Dauphin County with 201 counts of receiving stolen property for possessing, at his Montgomery County residence, motor vehicle inspection and/or emission stickers stolen in Delaware County.[13] The magisterial district court judge in Dauphin County preliminarily arraigned Mr. Saidi, released him on unsecured bail, and scheduled a preliminary hearing for April 2021.[14] Trooper Rastegarpanah then withdrew the receiving stolen property charges one day before the April 2021 preliminary hearing resulting in dismissal of the Dauphin County case.[15]

But the Dauphin County charges did not go away entirely. The Commonwealth amended the Montgomery County October 1, 2020 charges in August 2022 to add one of the "dismissed" receiving stolen property charges from Dauphin County.[16] The Commonwealth also added one new summary offense of operating a motor vehicle dealership on a Sunday.[17] The Commonwealth then *nolle prossed* the original forgery, perjury, tampering with public records, and "id-writing" charges.[18]

Mr. Saidi pleaded guilty in Montgomery County to the receiving stolen property charge—which originated in Dauphin County—and the new summary offense of operating a dealership.[19] The Commonwealth returned to Mr. Saidi more than $78,000 which Trooper Rastegarpanah seized from Mr. Saidi's bank accounts as part of the original Montgomery County charges.[20] The Commonwealth held his funds for several months after the judge reduced the bail.

Mr. Saidi waited until August 2024 before pro se suing the Commonwealth, the Pennsylvania State Police, and Trooper Rastegarpanah under 42 U.S.C. § 1983 alleging false arrest, false imprisonment, and malicious prosecution violating his Fourth and/or Fourteenth Amendment rights.[21] He asserts state law claims for malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress.[22] He alleges these state law claims, with the exception of malicious prosecution, violate the Pennsylvania Constitution.[23] He also pleads a standalone claim for punitive damages.[24] He sues Trooper Rastegarpanah in his individual and official capacities.[25]

## II.  Analysis

The Commonwealth, the Police, and Trooper Rastegarpanah moved to dismiss his claims now presented in an amended Complaint after Mr. Saidi reviewed the state actors' Motion to dismiss his Complaint.[26] Mr. Saidi did not timely respond. We grant in part and deny in part the Motion to dismiss allowing Mr. Saidi to proceed into discovery on his civil rights malicious prosecution claim against Trooper Rastegarpanah in his individual capacity.

### A.  We dismiss all claims against the Commonwealth, the Pennsylvania State Police, and Trooper Rastegarpanah in his official capacity as barred by the Eleventh Amendment.

The Commonwealth, the Police, and Trooper Rastegarpanah (to the extent Mr. Saidi sues him in his official capacity) seek dismissal of Mr. Saidi's constitutional claims, arguing they are

immune under the Eleventh Amendment.[27] We agree the Eleventh Amendment bars Mr. Saidi's constitutional claims and his state law claims.[28]

The Commonwealth as a sovereign is immune under the Eleventh Amendment from suits seeking money damages.[29] "[A] state may waive 'its sovereign immunity by consenting to suit[,]'" but Mr. Saidi does not allege the Commonwealth waived its immunity in this action.[30] The Commonwealth's Eleventh Amendment immunity extends to its agencies, including the Pennsylvania State Police, and to Commonwealth employees sued in their official capacity, such as Trooper Rastegarpanah.[31] Mr. Saidi cannot proceed against the Commonwealth or its agencies and employees acting in their official capacities for damages as he is now trying to do without the benefit of counsel.

We dismiss all claims against the Commonwealth, the Pennsylvania State Police, and Trooper Rastegarpanah in his official capacity.

### B. We grant in part and deny in part the Motion to dismiss the constitutional claims against Trooper Rastegarpanah in his individual capacity.

Mr. Saidi alleges Trooper Rastegarpanah violated his civil rights in the arrests and prosecutions in Montgomery County and in Dauphin County. He claims Trooper Rastegarpanah falsely arrested him, falsely imprisoned him, and maliciously prosecuted him in both counties. Trooper Rastegarpanah moves to dismiss these claims against him in his individual capacity. We deny his Motion to dismiss Mr. Saidi's malicious prosecution claim arising from alleged conduct in Montgomery and Dauphin Counties but dismiss the remaining constitutional claims.

#### 1. Mr. Saidi may proceed on his Fourth Amendment malicious prosecution claim arising in Montgomery County against Trooper Rastegarpanah, but we dismiss his remaining constitutional claims.

We first address Mr. Saidi's constitutional claims arising in Montgomery County. We find Mr. Saidi states a claim for malicious prosecution under the Fourth Amendment. He does not state

a claim for malicious prosecution under the substantive due process clause of the Fourteenth Amendment. Qualified immunity bars Mr. Saidi's claim for malicious prosecution under the procedural due process clause of the Fourteenth Amendment. We dismiss with prejudice Mr. Saidi's civil rights false arrest and false imprisonment claims as plainly untimely.

### i. Mr. Saidi states a claim for malicious prosecution in Montgomery County under the Fourth Amendment.

Trooper Rastegarpanah moves to dismiss Mr. Saidi's claim for malicious prosecution in Montgomery County, arguing he does not adequately plead malicious prosecution under the Fourth Amendment.[32] We disagree.

Mr. Saidi must plead (1) Trooper Rastegarpanah initiated a criminal proceeding, which (2) ended in Mr. Saidi's favor, (3) Trooper Rastegarpanah initiated the proceeding without probable cause, (4) maliciously or for a purpose other than bringing Mr. Saidi to justice, and (5) Mr. Saidi suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[33] Trooper Rastegarpanah ignores the two weeks in solitary confinement and seizure of $78,000 and instead argues Mr. Saidi cannot plead a criminal proceeding ended in his favor because he pleaded guilty in Montgomery County to receiving stolen property and operating a car dealership on a Sunday.[34]

But Mr. Saidi alleges the charges to which he pleaded guilty—receiving stolen property and operating a car dealership on a Sunday—are totally unrelated to the initial Montgomery County charges for forgery, perjury, tampering with public records, and "id-writing."[35] He pleads the receiving stolen property charge originated in Dauphin County.[36] But the Commonwealth added this receiving stolen property charge, along with the summary offense for operating a dealership on a Sunday, to Mr. Saidi's Montgomery County bill of information after *nolle prossing* the original Montgomery County charges.[37] Mr. Saidi claims he "received a favorable termination"

in the Montgomery County prosecution despite pleading guilty to the stolen property charge and the summary offense.[38]

Trooper Rastegarpanah disagrees. He argues, citing our Court of Appeals in *Kossler v. Crisanti*, when there is a conviction of one, but not all, charges, "the proper inquiry is 'whether the charge resulting in acquittal arises out of the same conduct as the charge resulting in conviction.'"[39] Trooper Rastegarpanah argues the original Montgomery County charges for forgery, perjury, tampering with records, and "id-writing", on the one hand, and the stolen property charge and summary offense Mr. Saidi pleaded guilty to, on the other, all aimed to punish the same conduct: the illegal operations occurring at Mr. Saidi's used car business.[40] Trooper Rastegarpanah then concludes Mr. Saidi "fails to establish that the criminal proceeding ended in his favor."[41]

We agree when analyzing the favorable termination element of Mr. Saidi's malicious prosecution claim we must ask whether the acquitted charges aimed to punish the same conduct as the charges Mr. Saidi pleaded guilty.[42] But we do not agree the charges Mr. Saidi pleaded guilty to arose from the conduct first charged in Montgomery County.

Our Court of Appeals in *Kossler* noted the distinction between a case where a defendant is "charged with two distinct offenses involving distinct allegations" and a case where all of the charges aim to punish one course of conduct.[43] Even where events leading to criminal charges occur on the same occasion, they do not necessarily arise out of the same criminal conduct.[44] Rather than employing a charge-by-charge analysis, our Court of Appeals instructed "the favorable termination element properly focuses on the proceeding as a whole."[45] Our Court of Appeals "left open the possibility that even when a plaintiff is convicted on one charge but not the other, a court may still hold that the criminal proceeding favorably terminated if the charged offenses 'contained distinct statutory requirements' and 'aimed to punish two different sets of conduct.'"[46]

Trooper Rastegarpanah does not address whether the offenses of forgery/perjury, tampering with public records, and "id-writing" contain distinct statutory requirements from the offenses Mr. Saidi pleaded guilty to—receiving stolen property and operating a car dealership on a Sunday. Nor does he detail Mr. Saidi's conduct leading to two sets of charges at the same time in courts ninety minutes apart. Trooper Rastegarpanah does not meet his burden. In reviewing a motion to dismiss we must "disregard legal conclusions . . . ."[47] And so we must disregard Trooper Rastegarpanah's conclusory argument the charges all aimed to punish the same conduct simply because they all related to Mr. Saidi's used car dealership operations. We are not convinced on the face of the amended Complaint the Montgomery County proceeding did not end favorably when the Commonwealth dismissed those charges. The Dauphin County charges Mr. Saidi pleaded guilty to may have aimed to punish a different set of conduct.

Mr. Saidi may proceed into discovery against Trooper Rastegarpanah in his individual capacity on his Fourth Amendment malicious prosecution claim arising from the Montgomery County case.

### ii. Mr. Saidi does not state a claim for section 1983 malicious prosecution in Montgomery County under the substantive due process clause.

Trooper Rastegarpanah asks we dismiss Mr. Saidi's Montgomery County malicious prosecution claim under the substantive due process clause of the Fourteenth Amendment, citing the "more-specific provision rule."[48] He argues the Fourth Amendment is the appropriate constitutional provision for analyzing malicious prosecution claims and Mr. Saidi's Fourteenth Amendment malicious prosecution is duplicative of his Fourth Amendment malicious prosecution claim. We agree.

Our Supreme Court instructed in *Albright v. Oliver*, "it is the Fourth Amendment, and not substantive due process, under which [Mr. Saidi's] claim must be judged."[49] Our Court of Appeals interprets *Albright* as standing for the "proposition that a section 1983 claim may be based on a constitutional provision other than the Fourth Amendment" but "claims governed by explicit constitutional text may not be grounded in substantive due process."[50]

We must dismiss Mr. Saidi's malicious process claim grounded in substantive due process consistent with the Supreme Court's guidance.

### iii. Qualified immunity bars Mr. Saidi's section 1983 claim for malicious prosecution in Montgomery County under the procedural due process clause.

Trooper Rastegarpanah asks we dismiss Mr. Saidi's Montgomery County malicious prosecution claim under the procedural due process clause of the Fourteenth Amendment under the doctrine of qualified immunity. He argues qualified immunity bars the claim because it is unclear whether malicious prosecution is a procedural due process right. We agree.

"'[T]he judicially created doctrine of qualified immunity' shields governmental officials from suit and from liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[51] The right must be "clearly established at the time of the challenged conduct."[52]

Trooper Rastegarpanah's alleged malicious prosecution of Mr. Saidi in Montgomery County started when the Commonwealth held him in solitary confinement under legal process—October 1, 2020. Our Court of Appeals had not as of October 2020—and still has not—decided whether a procedural due process right against malicious prosecution exists.[53] Our colleagues dismiss procedural due process malicious prosecution claims because "there is not a clear answer to the question of whether procedural due process is a viable 'constitutional peg' on which to hang

a theory of malicious prosecution."[54] "[T]he lack of clarity indicates that qualified immunity is available as a defense."[55]

We briefly address the theory it is not the source of the right, but the conduct itself, which must be clearly established.[56] Arrested citizens seeking to bring malicious prosecution claims under the procedural due process clause frequently argue state actors cannot claim qualified immunity if the state actors knew their conduct violated citizens' constitutional rights.[57] "Courts in this Circuit, however, have explicitly rejected this argument."[58] As Judge Pratter found, "[i]t would be strange to say that right X is clearly established just because right Y is clearly established and happens to prohibit the same conduct."[59] We agree with Judge Pratter. The contours of a procedural due process right to be free from malicious prosecution are not clearly established. Trooper Rastegarpanah could not have been on notice his conduct violated Mr. Saidi's procedural due process rights.

Qualified immunity bars Mr. Saidi's procedural due process malicious prosecution claim.

### iv. Mr. Saidi's section 1983 false arrest and false imprisonment claims arising in Montgomery County are plainly barred by the statute of limitations evident in the amended Complaint.

Trooper Rastegarpanah moves to dismiss Mr. Saidi's Montgomery County false arrest and false imprisonment claims arguing these claims are barred by the statute of limitations. We agree.

The "Third Circuit Rule" permits us to study a statute of limitations defense raised in a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."[60] "The length of the statute of limitations for a [section] 1983 claim is governed by the personal injury tort law of the state where the cause of action arose."[61] "The statute of limitations for a [section] 1983 claim arising in Pennsylvania is two years."[62] False arrest and false imprisonment are closely related causes of action which seek

a remedy for detention without legal process.[63] "Because '[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process* . . . . a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges.'"[64] "[A]t the time the time the plaintiff is held by a judicial authority, his claim transforms from false imprisonment to malicious prosecution—the false imprisonment ends and the malicious prosecution begins at that point."[65] If the individual is not held by legal process but released, the statute of limitations accrues at the time of release.[66]

Mr. Saidi alleges Trooper Rastegarpanah arrested him on October 1, 2020 and secured a cash bail of $600,000 before an unpleaded judge.[67] Mr. Saidi then spent two weeks in solitary confinement at Montgomery County Correctional Facility.[68] The statute of limitations for the alleged false arrest/imprisonment accrued when the false imprisonment ended. The false imprisonment ended when the Commonwealth began holding Mr. Saidi in solitary confinement *under legal process*—i.e., after the judge set bail at $600,000 at his preliminary arraignment. Mr. Saidi does not plead the date of his preliminary arraignment, but we can infer it took place on October 1 (the same day as his arrest) because he pleads he spent two weeks in solitary confinement before his preliminary hearing on October 14, 2020. The two-year statute of limitations for the false arrest and false imprisonment accrued on October 1, 2020 and expired on October 1, 2022.

Mr. Saidi sued Trooper R for the Montgomery County false arrest and false imprisonment on August 12, 2024, nearly two years after the statute of limitations expired. We dismiss the false arrest and false imprisonment claims as plainly time-barred.

11

> **2. Mr. Saidi may proceed against Trooper Rastegarpanah on his section 1983 malicious prosecution claim arising in Dauphin County under the Fourth Amendment, but we dismiss his remaining constitutional claims arising in Dauphin County.**

We next address Mr. Saidi's constitutional claims arising in Dauphin County. Mr. Saidi's section 1983 false arrest and false imprisonment claims are untimely. His malicious prosecution claim is not untimely on the face of the Complaint and may proceed.

> **i. Mr. Saidi's section 1983 false arrest and false imprisonment claims arising in Dauphin County are barred by the statute of limitations.**

Trooper Rastegarpanah moves to dismiss Mr. Saidi's Dauphin County false arrest and false imprisonment claims arguing these claims are barred by the statute of limitations. We agree.

As we noted above, "[t]he statute of limitations begins to run against an action for false imprisonment when the individual is released, or becomes held pursuant to legal process."[69] Mr. Saidi alleges Trooper Rastegarpanah arrested him on December 1, 2020 and transported him to the magisterial district court in Harrisburg.[70] An unpleaded judge preliminarily arraigned Mr. Saidi and scheduled a preliminary hearing for April 20, 2021.[71] In Dauphin County, unlike in Montgomery County, the Commonwealth released Mr. Saidi after his preliminary arraignment instead of holding him under legal process.[72] Mr. Saidi seemingly pleads the magisterial district judge arraigned and released him the same day as his arrest—December 1, 2020.[73] His statute of limitations for the false arrest and imprisonment accrued on December 1, 2020 and expired on December 1, 2022.

Mr. Saidi sued Trooper Rastegarpanah for the Dauphin County false arrest and false imprisonment on August 12, 2024, well beyond the statute of limitations. We dismiss these untimely claims.

> **ii. Mr. Saidi's section 1983 malicious prosecution claim arising in Dauphin County is not untimely and may proceed to the same extent as the section 1983 malicious prosecution claim arising in Montgomery County.**

Trooper Rastegarpanah also moves to dismiss Mr. Saidi's Dauphin County malicious prosecution claim as time-barred. We do not agree the malicious prosecution claim is untimely on the face of the Complaint.

We again must look at the "favorable termination" prong of a malicious prosecution claim because it informs our statute of limitations analysis. This time the question is whether Mr. Saidi's Dauphin County proceeding ended favorably. "Unlike a claim for false imprisonment, a claim for malicious prosecution accrues upon the favorable termination of criminal proceedings."[74] In *Weston v. City of Philadelphia*, for instance, Judge Savage found an arrested citizen's malicious prosecution claims accrued when the city dismissed the charges against him.[75]

Mr. Saidi alleges the Commonwealth dropped the Dauphin County charges on April 19, 2021.[76] So, Trooper Rastegarpanah argues the statute of limitations for the Dauphin County malicious prosecution claim accrued on April 19, 2021 and expired in April 2023.[77]

This argument gives us pause. The charges did not disappear even if the Commonwealth withdrew the charges against Mr. Saidi *in Dauphin County* in April 2021. The Commonwealth allegedly added the Dauphin County charge for receiving stolen property charge to Mr. Saidi's Montgomery County bill of information.[78] We are not convinced transferring a charge from one county to another constitutes a "favorable termination." Our Court of Appeals's decision in *Kossler* again guides our decision; there, our Court of Appeals held "upon examination of the entire

criminal proceeding, the judgment must indicate the plaintiff's ***innocence*** of the alleged misconduct underlying the offenses charged."[79] The Supreme Court in *Thompson v. Clark* abrogated *Kossler* to the extent it required a plaintiff to show an "affirmative indication of innocence"; now, "a plaintiff need only show that the criminal prosecution ended without a conviction."[80] But Mr. Saidi pleaded guilty to receiving stolen property. We do not think pleading guilty in a different county indicates innocence or even the less arduous "lack of conviction" required for malicious prosecution. It is not clear from the face of the amended Complaint when (if at all) the Dauphin County proceeding terminated favorably and triggered the statute of limitations. So, we cannot dismiss the claim as untimely.[81]

The absence of a favorable termination is at once the life raft for the claim's statute of limitations and the death knell of the claim's merits.[82] But Trooper Rastegarpanah rests on his untimeliness argument and does not move to dismiss the malicious prosecution claim for failure to state a claim. We will not dismiss this claim under Rule 12(b)(6) absent a properly supported motion. Mr. Saidi's Dauphin County section 1983 malicious prosecution claim may proceed. But it only survives under the Fourth Amendment as we already concluded Mr. Saidi does not state a claim for malicious under the Fourteenth Amendment.

### C. We dismiss the state law claims against Trooper Rastegarpanah in his individual capacity.

We now turn to Mr. Saidi's state law claims alleging malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress, and his standalone claim for punitive damages. Mr. Saidi alleges the intentional and negligent emotional distress claims also violate the Pennsylvania Constitution. Trooper Rastegarpanah moves to dismiss these claims against him in his individual capacity. We grant his Motion to dismiss the state law claims.

### 1. We enjoy supplemental jurisdiction over Mr. Saidi's state law claims.

We must determine whether we have jurisdiction over the state law claims. Congress directs us under section 1367 to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[83] This standard is satisfied when "state and federal claims . . . derive from a common nucleus of operative fact."[84] Supplemental jurisdiction may be proper, for instance, if the federal and state claims "are merely alternative theories of recovery based on the same acts[.]"[85]

Mr. Saidi's state law claims, like his constitutional claims, arise from Trooper Rastegarpanah's conduct in Montgomery and Dauphin County. We find the state law claims are closely related to the remaining federal claim for malicious prosecution under the Fourth Amendment. We enjoy supplemental jurisdiction over the state law claims. But we must address their viability under Rule 12(b)(6).[86]

### 2. We dismiss the state law claims against Trooper Rastegarpanah in his individual capacity as barred by sovereign immunity.

Trooper Rastegarpanah seeks dismissal of Mr. Saidi's state law claims on sovereign immunity grounds. We agree sovereign immunity bars Mr. Saidi's state law claims against Trooper Rastegarpanah in his individual capacity.

The Commonwealth and its employees generally enjoy sovereign immunity from suit under Pennsylvania law.[87] "Unlike Eleventh Amendment immunity, sovereign immunity 'applies to Commonwealth employees in both their official and individual capacities.'"[88] "Unless waived, immunity attaches for actions undertaken within the scope of the Commonwealth party's duties."[89] The Pennsylvania General Assembly waived immunity for claims involving certain enumerated negligent acts by Commonwealth parties.[90] The Pennsylvania Supreme Court five years ago held

"claim[s] of intentional wrongdoing . . . cannot constitute the type of negligent conduct for which the General Assembly has waived its immunity from liability."[91] In certain cases, though, "intentional conduct may fall . . . outside[] the scope of a state employee's duties . . . ."[92]

Trooper Rastegarpanah does not distinguish between Mr. Saidi's intentional and negligent tort claims. He argues sovereign immunity applies because none of Mr. Saidi's state law claims fall within the General Assembly's enumerated exceptions, and state troopers investigating crimes and filing charging documents are "within the scope of employment . . . ."[93] We agree neither Mr. Saidi's intentional tort claims (malicious prosecution, intentional infliction of emotional distress) nor his negligent tort claim (negligent infliction of emotional distress) fall within the enumerated exceptions where liability may be imposed.

We further agree Trooper Rastegarpanah's allegedly wrongful conduct occurred within the scope of his employment. Under the scope of employment test we must ask whether the Trooper's conduct (a) constituted the type of conduct the Pennsylvania State Police employed him to perform; (b) occurred within the authorized time and space limits; (c) was caused, at least in part, to serve his employer; and (d) if it involved force, the "use of force is not unexpectable" by the Pennsylvania State Police.[94] All of Mr. Saidi's claims arise from his Trooper Rastegarpanah arresting him and charging him with crimes consistent with his job.

Trooper Rastegarpanah's actions occurred within the scope of his employment as a state trooper.[95] Sovereign immunity bars Mr. Saidi's state law claims for malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress. We also dismiss Mr. Saidi's standalone claim for punitive damages. Punitive damages are not a cognizable standalone claim, and in any event, Mr. Saidi already requested punitive damages in connection with his constitutional claims.[96]

16

### III. Conclusion

We grant the state actors' motion to dismiss in part. Mr. Saidi may proceed into discovery on his Fourth Amendment malicious prosecution claim against Trooper Rastegarpanah in his individual capacity for the alleged conduct in Montgomery and Dauphin Counties.

We dismiss with prejudice Mr. Saidi's constitutional and state law claims against the Commonwealth, the Pennsylvania State Police, and Trooper Rastegarpanah in his official capacity; Mr. Saidi's Fourteenth Amendment malicious prosecution claim against Trooper Rastegarpanah in his individual capacity; Mr. Saidi's civil rights false arrest and false imprisonment claims against Trooper Rastegarpanah in his individual capacity; and Mr. Saidi's state law claims against Trooper Rastegarpanah in his individual capacity.

---

[1] "[A] Complaint, including a pro se Complaint, must conform with requirements of Rule 8(a) of the Federal Rules of Civil Procedure" requiring "the Complaint be simple, concise, direct and set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"*Atun  El v. United States*, No. 13-3970, 2014 WL 1281230, at *1 (E.D. Pa. Mar. 31, 2014) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993)). But our Supreme Court instructs us to hold pro se allegations "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "[B]ecause [Mr. Saidi] has filed his complaint pro se, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

[2] ECF 13 ¶¶ 9, 14.

[3] *Id.* ¶¶ 1–2, 13, 19.

[4] *Id.* ¶¶ 1, 13.

[5] *Id.* ¶¶ 13–14, 16.

[6] *Id.* ¶¶ 1, 15.

[7] *Id.* ¶¶ 1, 18.

---

[8] *Id.* ¶ 17.

[9] *Id.* ¶¶ 1, 18. Mr. Saidi alleges Trooper Rastegarpanah charged him in Montgomery County and then later withdrew one of the felony charges. "Prosecutors, not police, are generally responsible for initiating criminal proceedings." *Dress v. Falls Twp.*, No. 16-4918, 2017 WL 2215270, at *3 (E.D. Pa. May 19, 2017) (first citing *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005); then citing *Merrero v. Micewski*, No. 96-8534, 1998 WL 414724, at *6 (E.D. Pa. July 22, 1998)). "To hold a police officer responsible for initiating a criminal proceeding, a plaintiff needs to demonstrate that the officer 'knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.'" *Id.* (first quoting *Brockington*, 354 F. Supp. 2d at 569; then quoting *Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (3d Cir. 1998)). The state actor defendants do not argue someone other than Trooper Rastegarpanah charged and later withdrew the charges. Nor do they move to dismiss Mr. Saidi's malicious prosecution charge for this reason. So, we today assume Trooper Rastegarpanah began the proceedings against Mr. Saidi. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true . . . ." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

[10] ECF 13 ¶¶ 1, 18.

[11] *Id.* ¶¶ 2, 19.

[12] *Id.* ¶ 20.

[13] *Id.* ¶¶ 2, 19. We again note prosecutors, not police, initiate criminal proceedings, but we must today assume Trooper Rastegarpanah began the proceedings.

[14] *Id.* ¶¶ 2, 21.

[15] *Id.* ¶¶ 2, 22.

[16] *Id.* ¶¶ 3, 24.

[17] *Id.*

[18] *Id.* ¶¶ 1, 23.

[19] *Id.* ¶¶ 4, 25.

[20] *Id.* ¶¶ 5, 26.

[21] ECF 13 ¶¶ 28–31.

[22] *Id.* ¶¶ 32–48.

[23] *Id.* ¶¶ 42, 47.

[24] *Id.* ¶¶ 49–52.

[25] *Id.* ¶ 11.

[26] ECFs 8, 13, 15. The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Hum. Servs. Div. of Temp. Assistance & Soc. Servs*., 781 F. App'x 44, 46 (3d Cir. 2019) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (alteration in original) (quoting *Iqbal*, 556 U.S. at 668).

It is unclear whether the Attorney General is representing the Commonwealth as well as the Pennsylvania State Police and Trooper Rastegarpanah. On one hand, the Attorney General never entered an appearance on behalf of the Commonwealth and defines the "Commonwealth Defendants" as only the Pennsylvania State Police and Trooper Rastegarpanah. ECF 15 at 2. On the other hand, the Attorney General argues the Eleventh Amendment bars claims against all three Defendants. *Id.* at 6–7. We assume for the purposes of this Motion the Attorney General is representing the Commonwealth. The matter of the Commonwealth's representation is inconsequential in any event because Mr. Saidi cannot sue the Commonwealth. *See infra* Part II(A).

[27] ECF 15 at 6–7.

[28] *Clark v. Pennsylvania*, 885 F. Supp. 694, 714 (E.D. Pa. 1995) ("States are immune from suits based on State law claims in federal court under Eleventh Amendment protection." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984))). The Commonwealth Defendants only raise Eleventh Amendment immunity as to Mr. Saidi's constitutional claims but, mindful we may consider Eleventh Amendment issues sua sponte, we find it also applies to Mr. Saidi's state law claims. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 417 (3d Cir. 2003) ("[A] court *sua sponte* may raise Eleventh Amendment issues." (citing *Parella v. Ret. Bd. of Rhode Island Emps.' Ret. Sys.*, 173 F.3d 46, 54 (1st Cir. 1999))).

[29] *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997) ("To respect the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying, we have extended a State's protection from suit to suits brought by the State's own citizens." (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890))).

[30] *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 239 (3d Cir. 2003) (quoting *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)); Pa. Stat. and Cons. Stat. § 8521(b) (withholding consent to suit in federal court).

[31] *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'" (quoting *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987))); *Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) ("The District Court correctly determined that the Eleventh Amendment bars claims for damages against the PSP, a state agency that did not waive its sovereign immunity[.]" (citing Pa. Stat. and Cons. Stat. §§ 61, 732-101)); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state.'" (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991))).

[32] ECF 15 at 11–14.

[33] *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

[34] ECF 15 at 12.

[35] ECF 13 ¶¶ 4, 6.

[36] *Id.* ¶¶ 2, 19.

[37] *Id.* ¶¶ 3, 24.

[38] *Id.* ¶ 6.

[39] ECF 15 at 13 (quoting *Kossler v. Crisanti*, 564 F.3d 181, 190 (3d Cir. 2009)), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022).

[40] *Id.*

[41] *Id.* at 14.

[42] *Kossler*, 564 F.3d at 189–91.

[43] *Id.* at 190–92.

[44] *Id.* at 190–91 (discussing *Janetka v. Dabe*, 892 F.2d 187 (2d Cir. 1989) and *Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998)).

[45] *Id.* at 193.

[46] *Alburg v. Jones*, No. 21-2580, 2023 WL 2823895, at *3 n.13 (3d Cir. Apr. 7, 2023) (quoting *Kossler*, 564 F.3d at 191).

[47] *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)).

[48] ECF 15 at 15. Mr. Saidi does not allege which part of the Fourteenth Amendment the Trooper's conduct violated. We analyze his claim under the substantive due process clause and procedural due process clause. Trooper Rastegarpanah also addresses Mr. Saidi's claim under the equal protection clause, *id.* at 17–18, but we do not construe Mr. Saidi as asserting an equal protection violation.

[49] 510 U.S. 266, 271 (1994).

[50] *Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998).

[51] *Mack v. Yost*, 63 F.4th 211, 221 (3d Cir. 2023) (alteration in original) (quoting *Peroza-Benitez v. Smith*, 994 F.3d 157, 164–65 (3d Cir. 2021)).

[52] *Hicks v. City of Phila.*, No. 22-977, 2023 WL 5278713, at *8 (E.D. Pa. Aug. 16, 2023) (quoting *George v. Rehiel*, 738 F.3d 562, 579 (3d Cir. 2013)).

[53] *Handy v. City of Phila*, No. 24-1905, 2024 WL 4309973, at *3 (E.D. Pa. Sept. 26, 2024) ("The Court dismisses the Fourteenth Amendment claim on qualified-immunity grounds because there is no clearly established right against malicious prosecution under the Fourteenth Amendment . . . ." (collecting cases)); *Alicea v. City of Phila*, No. 22-3437, 2022 WL 17477143, at *4 (E.D. Pa. Dec. 6, 2022) ("Given that the law remains unsettled to this day, a Fourteenth Amendment procedural due process right to be free from malicious prosecution could not have been 'clearly established' at the time of the individual Defendants' conduct." (citing *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018))).

[54] *Lewis v. City of Phila*, No. 19-2847, 2020 WL 1683451, at *7 (E.D. Pa. Apr. 6, 2020) (quoting *Albright*, 510 U.S. at 270 n.4). *But see Hicks*, 2023 WL 5278713, at *8 (allowing Fourteenth Amendment malicious prosecution claim to proceed to discovery).

[55] *Lewis*, 2020 WL 1683451, at *7 (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

[56] *Swainson v. City of Phila.*, No. 22-2163, 2023 WL 144283, at *4 (E.D. Pa. Jan. 10, 2023); *Thomas*, 290 F. Supp. 3d at 382–83.

[57] *See, e.g.*, *Swainson*, 2023 WL 144283, at *4 ("Mr. Swainson argues that what matters for purposes of qualified immunity is not the textual source of the right in question, but rather its contours."); *Thomas*, 290 F. Supp. 3d at 382 ("Mr. Thomas shifts his focus from the *right* to the officers' *conduct*. As he puts it, the 'exact constitutional provision' that has been violated is 'irrelevant,' so long as some constitutional provision is clearly violated.").

---

[58] *Swainson*, 2023 WL 144283, at *4 (first citing *Alicea*, 2022 WL 17477143, at *4; then citing *Thomas*, 290 F. Supp. 3d at 382–83); *see also Hicks*, 2023 WL 5278713, at *8 n.14 ("This argument has not gotten traction in other district courts . . . .").

[59] *Thomas*, 290 F. Supp. 3d at 382–83.

[60] *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

[61] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).

[62] *Id.* (first citing 42 PA. STAT. AND CONS. STAT. § 5524; then citing *Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir. 1993)).

[63] *See Wallace*, 549 U.S. at 388–89.

[64] *Weston v. City of Phila.*, No. 17-2432, 2017 WL 3722435, at *3 (E.D. Pa. Aug. 29, 2017) (alteration in original) (first quoting *Wallace*, 549 U.S. at 389; then citing *Hunt v. City of Scranton,* 236 Fed. App'x 740, 743 (3d Cir. 2007)).

[65] *Id.* at *2.

[66] *See Alexander v. Fletcher*, 367 F. App'x 289, 290 n.2 (3d Cir. 2010) (citing *Wallace*, 549 U.S. at 389).

[67] ECF 13 ¶¶ 1, 13, 15.

[68] *Id.* ¶¶ 1, 15.

[69] *See Alexander*, 367 F. App'x at 290 n.2 (citing *Wallace*, 549 U.S. at 389).

[70] ECF 13 ¶¶ 2, 19–20.

[71] *Id.* ¶¶ 2, 21.

[72] *Id.* ¶ 21.

[73] *Id.* ¶¶ 2, 21.

[74] *Weston*, 2017 WL 3722435, at *3 (citing *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016)).

[75] *Id.*

[76] ECF 13 ¶¶ 2, 22.

---

[77] ECF 15 at 11.

[78] ECF 13 ¶¶ 3, 24.

[79] *Kossler*, 564 F.3d at 188 (emphasis added).

[80] 596 U.S. 36, 49 (2022).

[81] "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson*, 313 F.3d at 135 (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

[82] One of the elements in a section 1983 malicious prosecution is a favorable termination of the criminal proceeding. *See DiBella*, 407 F.3d at 601 (citing *Marasco*, 318 F.3d at 521).

[83] 28 U.S.C. § 1367(a).

[84] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[85] *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995) (quoting *Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979)).

[86] We dismiss the tort claims to the extent Mr. Saidi attempts to bring them under the Pennsylvania Constitution. Pennsylvania judges do not recognize claims for monetary damages under the Pennsylvania Constitution. *See Collura v. City of Phila.*, 590 Fed. App'x 180 (3d Cir. 2014) (quoting *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)). And "[s]ection 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Miller v. C.M.S. Corr. Med. Serv.*, No. 08-3014, 2010 WL 1009788, at *3 (D.N.J. Mar. 16, 2010) (first quoting *Baker v. McCollan*, 443 U.S. 137, 146 (1979); then citing *Tierney v. Davidson*, 133 F.3d 189, 199 n.7 (2d Cir. 1998)).

Mr. Saidi alleges his intentional and negligent infliction of emotional distress claims violate the United States Constitution as well as the Pennsylvania Constitution and state law. The claims alleging emotional distress in violation of the United States Constitution fail as a matter of law. *See Miller*, 2010 WL 1009788, at *3 ("[A]ny claim under § 1983 for emotional distress allegedly suffered by Plaintiff, to the extent such a claim can be construed from the Complaint, must fail as a matter of law.").

[87] 1 PA. STAT. AND CONSOL. STAT. § 2310.

[88] *Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 606 (M.D. Pa. 2013) (quoting *Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa.2008)).

[89] *Sutton v. Bickell*, 220 A.3d 1027, 1035 (Pa. 2019) (citing *Justice v. Lombardo*, 208 A.3d 1057, 1067 (Pa. 2019)).

[90] *Id.* (first citing 42 PA. STAT. AND CONSOL. STAT. § 8522(a); then citing 42 PA. STAT. AND CONSOL. STAT. § 8522(b)). The enumerated exceptions for which the General Assembly waives sovereign immunity include (1) vehicle liability; (2) medical-professional liability; (3) actions arising from the care, custody, or control of personal property in the Commonwealth's control; (4) actions arising from Commonwealth real estate, highways, and sidewalks; (5) actions arising from potholes and other dangerous conditions; (6) actions arising from the care, custody, or control of animals in the Commonwealth's control; (7) actions arising from liquor store sales; (8) actions arising from National Guard activities; (9) actions involving the administration, manufacture, and use of a toxoid or vaccine not manufactured in the Commonwealth, subject to certain conditions; and (10) certain actions involving sexual abuse.  42 PA. STAT. AND CONSOL. STAT. § 8522(b).

[91] *Sutton*, 220 A.3d at 1035 (citation omitted).

[92] *Id.* (citing *Lombardo*, 208 A.3d at 1073).

[93] ECF 15 at 19 (citing *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 683 (M.D. Pa. 2010)).

[94] *See Lombardo*, 208 A.3d at 1067.

[95] *See Schell v. Guth*, 88 A.3d 1053, 1069 (Pa. Commw. Ct. 2014) ("Clearly, when a police officer arrests an accused on criminal charges, the officer is engaging in an activity of the kind and nature he is employed to perform.").

[96] *Laws v. Husqvarna Grp.*, No. 22-4588, 2023 WL 1767477, at *3 (E.D. Pa. Feb. 3, 2023) ("Punitive damages are not a separate cause of action in Pennsylvania." (first citing *Waltman v. Fahnestock & Co.*, 792 F. Supp. 31, 33 (E.D. Pa. 1992); then citing *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989))).