IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFF SAIDI** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 24-4170** |
| | : | |
| **TROOPER BIJAN RASTEGARPANAH** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                              **April 22, 2025**

A Pennsylvania State Trooper's audit of car titles and registrations led him to criminally charge a used car dealer with distinct frauds at different times in two Pennsylvania counties. The Commonwealth eventually dismissed the second-filed charges but transferred those charges to the first-filed county. The Commonwealth and the used car dealer then reached a plea deal: he pleaded guilty to two of the charges in exchange for the *nolle prosse* dismissal of the other charges. The state court judge convicted him on the two pleaded charges.

The car dealer turned around and pro se sued the investigating State Trooper two years later for malicious prosecution claiming the Trooper lacked a basis for the later dismissed claims. We allowed discovery. The Trooper now moves for summary judgment. We find no genuine issue of material fact requiring a jury to decide whether the car dealer obtained a favorable termination on the charges voluntarily dismissed in exchange for a plea. We cannot find the Commonwealth's dismissal of some charges in exchange for a guilty plea on other charges constitutes a favorable termination. There is no evidence the Trooper did anything wrong. He arrested a car dealer based on an audit, witness statement, and a confidential informant and undercover operation leading to different charges. The Commonwealth decided to partially combine the charges and later accept a guilty plea on two of the charges instead of going to trial on all charges. The car dealer is not

exonerated; no one found him not guilty of the dismissed charges. We grant the Trooper summary judgment.

I.  **Undisputed Material Facts**

Pennsylvania State Trooper Bijan Rastegarpanah worked as an investigator in the Vehicle Fraud Investigations Unit of the Pennsylvania State Police in late 2019 and 2020.[1] He conducted audits of tag agencies and car dealerships licensed by the Pennsylvania Department of Transportation (PennDOT).[2] He determined 147 title or registration plate transactions had been obtained using fraudulent drivers' licenses during an October 2019 audit of a Delaware County tag agency.[3] Trooper Rastegarpanah knew some car dealerships charged fees to create vehicle registrations for foreign nationals (who may otherwise not obtain title for lack of documents) through fraudulent means.[4] This type of fraudulent scheme involved delivering a large quantity of car title transactions to tag agents with fictitious documents, such as fraudulent drivers' licenses and insurance cards, to obtain a "washed" title.[5]

Trooper Rastegarpanah learned during his October 2019 audit that Jeff Saidi—a used car dealer and commissioned notary public in Montgomery County—had notarized the seller's signatures on thirty-four of the 147 suspect titles.[6] Mr. Saidi performed notary services but was not a tag agent for PennDOT.[7] Trooper Rastegarpanah spoke with unidentified persons at PennDOT's Risk Management Office and learned Mr. Saidi frequented PennDOT's headquarters in Dauphin County.[8] The unidentified PennDOT employees informed Trooper Rastegarpanah Mr. Saidi often requested "dealer titles," which were titles PennDOT previously identified as fraudulent.[9] Obtaining a "dealer title" removes PennDOT's administrative hold on a vehicle title obtained fraudulently, therefore allowing the car to be retitled without further investigation.[10] Trooper

Rastegarpanah learned Mr. Saidi obtained driver titles from PennDOT and immediately transferred them to other individuals using fraudulent drivers' licenses.[11]

Trooper Rastegarpanah investigated the thirty-four titles fraudulently notarized by Mr. Saidi and interviewed the owner of one of the cars with questionable title on January 31, 2020.[12] The car purchaser, a foreign national, confirmed someone forged her signature on the title.[13] The title transfer indicated a "Herb Byrd" sold her the car and Mr. Saidi notarized the signature.[14] The Trooper discovered seven other titles notarized by Mr. Saidi with the car seller identified as "Herb Byrd."[15]

Several months after the interview with the foreign national, a confidential informant told Trooper Rastegarpanah of Mr. Saidi's fraudulent scheme to obtain registrations for foreign nationals.[16] The Trooper learned Mr. Saidi notarized items without the individual present, charged foreign nationals between $800 and $1,000 for license plates, and used the pen name "Herb Byrd" when notarizing title transfers.[17]

Trooper Rastegarpanah then arranged for an undercover State Trooper, Sergio Colon, to meet Mr. Saidi at one of his car dealerships on September 16, 2020 in an attempt to purchase a registration plate with fraudulent documents.[18] Undercover Trooper Colon provided Mr. Saidi a title for a 2003 Nissan with the back of the title blank.[19] Mr. Saidi requested Trooper Colon forge the signature of the seller of the Nissan.[20] Trooper Colon complied, gave the title to Mr. Saidi, and provided Mr. Saidi with fictitious contact information using the name Fernando Ramirez.[21] He did not provide Mr. Saidi with a Pennsylvania driver's license or identification.[22] Mr. Saidi told Trooper Colon the registration plate cost $900.[23] Trooper Colon paid Mr. Saidi $700 and Mr. Saidi made a note the Trooper still owed him $200.[24] Mr. Saidi told Trooper Colon he would have the registration plate ready as soon as possible.[25]

Mr. Saidi contacted Trooper Colon the next day and told him he could come pick up the license plate.[26] Trooper Colon visited the dealership on September 18, 2020 and paid Mr. Saidi the $200 balance.[27] Mr. Saidi then gave Trooper Colon a Pennsylvania registration plate and card with the number LKC1057.[28]

Trooper Rastegarpanah's review of the records for this registration plate LKC1057 confirmed the registration plate had been obtained in Allentown.[29] PennDOT records showed an active record submitted on September 17, 2020 for "Fernando Ramirez" with registration plate LKC1057 obtained with a fraudulent driver's license and insurance information.[30] Trooper Rastegarpanah's investigation of Mr. Saidi confirmed his involvement in the title fraud scheme to obtain authentic vehicle registrations for foreign nationals.[31]

### *The Trooper charges Mr. Saidi in Montgomery County.*

Trooper Rastegarpanah filed a criminal complaint and affidavit of probable cause on September 28, 2020 in Montgomery County, Pennsylvania.[32] Judge Scott approved a warrant for Mr. Saidi's arrest on September 28, 2020.[33] Trooper Rastegarpanah arrested Mr. Saidi on October 1, 2020 after executing a search warrant of Mr. Saidi's residence and his used car dealerships.[34] Trooper Rastegarpanah filed eleven criminal charges against Mr. Saidi in Montgomery County: deceptive or fraudulent business practices; corrupt organizations; dealing in proceeds of unlawful activity; thirty-five counts of forgery; washing vehicle titles; thirty-five counts of perjury; thirty-five counts of tampering with public records or information; thirty-five counts of tampering with records or identification; altered, forged, or counterfeit documents and plates; and tampering with or fabricating physical evidence.[35] He later withdrew the charge for dealing in proceeds of unlawful activity.[36] An unidentified judge set Mr. Saidi's bail at $600,000 on October 1, 2020, then lowered it to $50,000 on October 14, 2020.[37]

4

### *The Trooper charges Mr. Saidi in Dauphin County.*

Trooper Rastegarpanah conducted a search warrant of another property owned by Mr. Saidi in Plymouth Meeting on October 6, 2020.[38] He found 100 annual PennDOT inspection stickers and 101 PennDOT inspection and emissions stickers.[39] PennDOT at some point issued the stickers to an inspection station in Ridley Township, PA, but the inspection station owner reported them stolen on September 16, 2020.[40] The stickers originally belonged to PennDOT in Harrisburg.[41] Mr. Saidi purchased the stickers from a reliable vendor on social media at the market price.[42]

Trooper Rastegarpanah filed a new criminal complaint and affidavit of probable cause in Dauphin County and an unidentified judge issued a warrant for Mr. Saidi's arrest on December 1, 2020.[43] Trooper Rastegarpanah filed 201 counts of receiving stolen property against Mr. Saidi in Dauphin County.[44]

Trooper Rastegarpanah withdrew the charges in Dauphin County on April 19, 2021.[45] The Commonwealth's attorneys then transferred the Dauphin County receiving stolen property charge to the earlier filed Montgomery County Docket and amended the Montgomery County bill of information to include the receiving stolen property charge (originally filed in Dauphin County) on August 15, 2022.[46]

### *Mr. Saidi pleads guilty to receipt of stolen property and then sues the Trooper.*

Mr. Saidi pleaded guilty to receiving stolen property and operating a car dealership on a Sunday on August 15, 2022.[47] The Commonwealth *nolle prossed* all the original Montgomery County charges as part of a guilty plea with Mr. Saidi so only the stolen property charge from Dauphin County remained on the docket.[48] The Commonwealth also added one additional summary offense of operating a car dealership on a Sunday.[49]

Mr. Saidi pro se sued Trooper Rastegarpanah and other state actors for various civil rights violations and state law claims almost two years later on August 12, 2024.[50] We allowed his Fourth Amendment malicious prosecution claim against Trooper Rastegarpanah to proceed to discovery.[51]

## II. Analysis

Trooper Rastegarpanah now moves for summary judgment on Mr. Saidi's malicious prosecution claim.[52] Mr. Saidi opposes.[53] Mr. Saidi, to proceed to trial on a civil rights malicious prosecution claim, must show: (1) the Trooper initiated a criminal proceeding; (2) the criminal proceeding ended in Mr. Saidi's favor; (3) the Trooper began the proceeding without probable cause; (4) the Trooper acted maliciously or for a purpose other than bringing Mr. Saidi to justice; and (5) Mr. Saidi suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[54]

Trooper Rastegarpanah argues the proceedings did not end in Mr. Saidi's favor because Mr. Saidi pleaded guilty to certain charges.[55] Mr. Saidi succinctly responds both criminal cases ended in his favor because the Commonwealth dismissed the Dauphin County case in its entirety on April 19, 2021, and the Commonwealth *nolle prossed* the Montgomery County charges on August 15, 2022.[56] Mr. Saidi also argues he is not a PennDOT agent authorized to perform title and registration services; he simply performed notary services for immigrants because it is his "moral viewpoint" undocumented persons must be able to drive vehicles to perform labor vital to the country's economy.[57] He also questions why the Commonwealth charged him, the notary, with criminal conduct but did not charge the tag agency.[58] It is unclear which element of malicious prosecution his last few arguments are intended to support; Mr. Saidi seemingly argues the charges themselves are morally dubious, or at the very least, levied at the wrong person. But we have no power to change Pennsylvania law and the question of why Trooper Rastegarpanah did not charge other

6

persons is not before us today. We instead begin and end our analysis by deciding whether Mr. Saidi adduced evidence the criminal proceedings ended in his favor as necessary to proceed to trial on his malicious prosecution claim.

We find no evidence the criminal proceeding ended in his favor. "[A] malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused."[59] Mr. Saidi may meet this element by demonstrating his earlier criminal proceeding terminated with "(a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court."[60]

This is a simple test complicated in this case by the fact the Commonwealth charged Mr. Saidi in two criminal proceedings in two different counties based on distinct facts. Trooper Rastegarpanah filed criminal charges against Mr. Saidi in Montgomery and Dauphin Counties and withdrew the charges in Dauphin County in April 2021. The Commonwealth amended the Montgomery County bill of information on August 15, 2022 to add the Dauphin County charges. The Commonwealth then *nolle prossed* the original Montgomery County charges as part of a plea agreement so only the Dauphin County stolen property charge (plus a later-added summary offense of operating a car dealership on a Sunday) remained. Mr. Saidi pleaded guilty to the stolen property charge and the summary offense.

We must answer two questions: (1) did the Trooper's dropping the charges in Dauphin County and the Commonwealth later transferring them to a different county result in a favorable termination in the Dauphin County proceedings? and, (2) did the Commonwealth *nolle prossing* the Montgomery County charges result in a favorable termination in the Montgomery County

7

proceedings? We considered these questions at the motion to dismiss stage but revisit them now with the benefit of adduced evidence.[61]

We distinguish between conviction, acquittal, and charges *nolle prossed*. If a person is convicted of some charges and acquitted of others, "upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged."[62] "When the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element."[63] We should not apply a charge-by-charge analysis to the favorable termination element.[64] Still, "when a plaintiff is convicted on one charge but not the other," we "may still hold that the criminal proceeding favorably terminated if the charged offenses 'contained distinct statutory requirements' and 'aimed to punish two different sets of conduct.'"[65] Our Court of Appeals directs us to "apply a two-step analysis to determine whether the prosecution was favorably terminated."[66] We must "consider whether the offenses of conviction and acquittal (1) share common elements or involve lesser-included offenses; and (2) stem from the same underlying conduct, such that they 'cannot be divorced.'"[67]

Trooper Rastegarpanah largely repeats the argument he made when moving to dismiss. He claims the criminal charges levied against Mr. Saidi in both counties "aimed to punish the same conduct—namely, the fraudulent scheme and illegal operations occurring at [Mr. Saidi's] used car businesses."[68] He further argues Mr. Saidi cannot prove the dropped charges in Montgomery County constituted a favorable termination because the Commonwealth dropped the charges as part of Mr. Saidi's negotiated plea deal.[69]

Trooper Rastegarpanah does not address whether transferring the charges levied against Mr. Saidi in Dauphin County to his Montgomery County docket constituted a favorable termination of the Dauphin County proceeding. But plainly we must answer this question in the negative. We cannot find the Dauphin County proceeding ended in Mr. Saidi's favor because he pleaded guilty to the receiving stolen property charge, albeit in a different county.[70]

The first-filed Montgomery County proceeding is less straightforward. The Commonwealth *nolle prossed* the original Montgomery County charges as part of the plea agreement under which Mr. Saidi pleaded guilty to the receiving stolen property charge and the summary offense of operating a dealership on a Sunday.[71] When we studied this issue months ago based solely on the pleadings, we found the charges Mr. Saidi pleaded guilty to (receiving stolen property and the summary offense) did not arise from the same conduct charged in Montgomery County (forgery, tampering with records, and ID-writing).[72] We pointed out Trooper Rastegarpanah did not address whether Montgomery County charges contained different statutory requirements than the Dauphin County charges.

Trooper Rastegarpanah still does not argue the two sets of charges share common elements. With the benefit of the record before us, we remain unconvinced the charges in Montgomery County aimed to punish the same conduct as the charges in Dauphin County. It appears the offenses charged in Montgomery County arising from Mr. Saidi's false title scheme are different from the offenses charged in Dauphin County arising from his unlawful possession of inspection and emissions stickers. But we need not address the elements of the offenses or make a finding as to whether the charges stem from the same conduct. Even assuming the charges aimed to punish different conduct, Mr. Saidi still could not show the favorable termination required to proceed on a malicious prosecution claim.

Why not? We now have evidence the Commonwealth *nolle prossed* the Montgomery County charges in exchange for Mr. Saidi's guilty plea on the Dauphin County charges. "[A] *nolle prosequi* indicates termination of the charges in favor of the accused 'only when their final disposition is such as to indicate the innocence of the accused.'"[73] "A prosecutor's decision to drop charges as part of a compromise with the accused does not amount to a 'favorable termination' of state proceedings for purposes of permitting the accused to maintain a subsequent claim under [section] 1983 for malicious prosecution."[74] Our Court of Appeals in *Hilfirty v. Shipman* held "unlike a situation where the prosecution seeks a grant of nolle prosequi 'because of insufficient evidence,' dismissal of charges as a result of a compromise is not an indication that the accused is actually innocent of the crimes charged."[75] Our Court of Appeals followed this rule ten years later in *Marable v. West Pottsgrove Township*, finding it insignificant the state prosecutor dropped the charge of making terroristic threats as part of a plea agreement he reached with the plaintiff.[76]

Mr. Saidi does not adduce evidence creating a fact issue with respect to the plea agreement. The dismissal of the Montgomery County charges resulted from Mr. Saidi's plea agreement, not from his innocence.[77] It follows he cannot establish a favorable termination.[78] Without a favorable termination, Mr. Saidi cannot proceed. We need not consider whether there are genuine issues of material fact on the remaining elements of a malicious prosecution claim.[79]

**III.    Conclusion**

Mr. Saidi cannot demonstrate a question of material fact suggesting he obtained the favorable termination necessary to proceed on his malicious prosecution claim. Mr. Saidi admitted his guilt on two charges. But no one ever found him not guilty on the remaining charges. The Commonwealth dismissed the remaining charges as part of a plea agreement. The Trooper is

entitled to judgment as a matter of law. We grant Trooper Rastegarpanah's Motion for summary judgment.

---

[1] ECF 33-1 ¶ 3.

[2] *Id.* ¶ 4.

[3] *Id.* ¶ 5. Anyone wishing to legally obtain registration and new title for a vehicle in Pennsylvania must provide his or her driver's license or another acceptable form of identification, an original motor vehicle title, and a copy of the vehicle's insurance. Applicants must be physically present in the tag agency at the time of the transfer to sign the title in front of the PennDOT agent. *Id.* ¶ 6; ECF 44 ¶ 6.

[4] ECF 33-11 ¶ 5.

[5] *Id.*

[6] ECF 33-1 ¶¶ 1–2, 8; ECF 44 ¶ 8.

[7] ECF 44 ¶¶ 2, 8, 12, 13.

[8] ECF 33-1 ¶ 9; ECF 44 ¶ 9.

[9] ECF 33-1 ¶ 9.

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 10.

[13] *Id.*

[14] *Id.*

[15] *Id.* ¶ 11.

[16] *Id.* ¶ 12; ECF 33-6 at 5 (using the pagination assigned by the CM/ECF docketing system).

[17] ECF 33-1 ¶ 12; ECF 33-6 at 5. Mr. Saidi responds only that "Herb Byrd [i]s authorized to sign for the Vehicle Titles owned by the Plaintiff's dealership." ECF 44 ¶¶ 10, 12. Mr. Saidi does not dispute he used the name Herb Byrd for transactions.

[18] ECF 33-1 ¶ 13.

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* Mr. Saidi maintains he collected the money for the tag agency, not for himself, as his dealership is not a place for someone to buy a registration plate. ECF 44 ¶ 13. He "simply performed Notary acts for the sellers." *Id.*

[26] ECF 33-1 ¶ 14.

[27] *Id.* ¶ 15.

[28] *Id.*

[29] *Id.* ¶ 16.

[30] *Id.*

[31] ECF 33-11 ¶ 6.

[32] ECF 33-1 ¶ 17.

[33] *Id.*; ECF 33-6 at 6.

[34] ECF 33-1 ¶ 18. The search warrant for 550 Plymouth Road and Mr. Saidi's used car dealerships does not appear to be included in the Commonwealth's record; only the later-issued search warrant for Mr. Saidi's property at 835 Woodbrook Lane, Plymouth Meeting, PA is attached. ECF 33-6 at 2–7. But Mr. Saidi does not challenge the propriety of the first search, so the missing search warrant does not impact our decision.

[35] *Id.* ¶ 19; ECF 33-5.

[36] ECF 33-12 at 215 (using the pagination assigned by the CM/ECF docketing system).

[37] ECF 33-9 at 3 (using the pagination assigned by the CM/ECF docketing system).

[38] ECF 33-1 ¶ 20.

[39] *Id.* ¶ 23; ECF 33-6 at 9.

[40] ECF 33-1 ¶ 23; ECF 33-10 at 5 (using the pagination assigned by the CM/ECF docketing system). Mr. Saidi disputes the inspection stickers were stolen because the discovery he received from Trooper Rastegarpanah contained no evidence the stickers were reported stolen. ECF 44 ¶ 23. But Trooper Rastegarpanah adduced an affidavit of probable cause where he swore the owner of an inspection station reported the stickers as stolen to the Ridley Township Police Department on September 16, 2020; this affidavit also contains the incident number for the police report. ECF 33-10 at 5 (Bates labeled DEF_050). There is no dispute Mr. Saidi received this affidavit in discovery as shown by the Bates numbering system.

[41] EF 33-1 ¶ 24; ECF 44 ¶ 24 ("Inspection station purchased the stickers from PennDOT[.]").

[42] ECF 44 ¶ 23.

[43] ECF 33-11 ¶ 10.

[44] ECF 33-1 ¶ 25; ECF 33-12 at 216.

[45] ECF 33-1 ¶ 26.

[46] *Id.* ¶¶ 21, 26; ECF 33-7; ECF 33-12 at 216.

[47] ECF 33-1 ¶ 22; ECF 33-8.

[48] ECF 33-1 ¶ 21; ECF 33-8; ECF 33-12 at 215–16.

[49] ECF 33-7; ECF 33-8; ECF 33-9 at 3; ECF 33-12 at 216.

[50] ECF 1. Mr. Saidi obtained counsel several months after we denied Trooper Rastegarpanah's Motion to dismiss. ECF 30. We later granted Mr. Saidi's counsel leave to withdraw. ECF 37.

[51] ECFs 16, 17. We found no favorable termination at the Motion to dismiss stage as to the malicious prosecution claim in Montgomery County because the charges Mr. Saidi ultimately pleaded to arose from different conduct than the charges the Commonwealth *nolle prossed*. ECF 16 at 7–8. We allowed the malicious prosecution charge in Dauphin County to proceed because the Commonwealth only moved to dismiss that claim based on timeliness, not on the merits. We could not find the Dauphin County charges terminated favorably on the face of the amended Complaint, thus triggering the statute of limitations, so we had no grounds to dismiss the claim as time barred. *Id.* at 13–14.

[52] ECF 36. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is "genuine" if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Servs.*, 850 F.3d 526, 534

(3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533–34 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

We are mindful of Mr. Saidi's status as a pro se litigant. The Supreme Court instructs us to hold pro se allegations "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "However, despite this liberal interpretation, the same standards for summary judgment apply to *pro se* litigants." *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009) (citing *United States v. Asken*, No. 01–0026, 2002 WL 32175416, at *1 n.11 (E.D. Pa. Oct. 28, 2002)). Mr. Saidi "is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Ray v. Fed. Ins. Co.*, No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007), *aff'd sub nom. Ray v. Fed. Ins. Co./Chubb*, 256 F. App'x 566 (3d Cir. 2007).

[53] ECF 45.

[54] *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (quoting *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

[55] ECF 36 at 12–15 (using the pagination assigned by the CM/ECF docketing system).

[56] ECF 45 at 5–6 (using the pagination assigned by the CM/ECF docketing system). Mr. Saidi also attempts to now argue a civil rights claim against Trooper Rastegarpanah for depriving him of reasonable bail under the Eighth Amendment. *Id.* at 4–5. But Mr. Saidi did not plead an Eighth Amendment unreasonable bail claim in his amended Complaint (ECF 13), so we do not consider these unpleaded allegations related to excessive bail.

[57] ECF 45 at 8–11.

[58] *Id.* at 11.

[59] *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022).

[60] *Id.* (quoting *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002)).

[61] ECF 16 at 6–8, 13–14.

[62] *Kossler*, 564 F.3d at 188.

[63] *Id.*

[64] *See id.* at 193.

[65] *Alburg v. Jones*, No. 21-2580, 2023 WL 2823895, at *3 n.13 (3d Cir. Apr. 7, 2023) (quoting *Kossler*, 564 F.3d at 191).

[66] *Jones v. Grill*, No. 21-2091, 2024 WL 3423707, at *2 (3d Cir. July 16, 2024) (citing *Kossler*, 564 F.3d at 188–89).

[67] *Id.* (quoting *Kossler*, 564 F.3d at 188–89).

[68] ECF 36 at 14.

[69] *Id.* at 14–15.

[70] As we noted in our December 13, 2024 Opinion, the Supreme Court in *Thompson v. Clark* held a plaintiff does not need to show an "affirmative indication of innocence" for a section 1983 malicious prosecution claim; instead, he or she only needs to "show that the criminal prosecution ended without a conviction." 596 U.S. 36, 49 (2022). ECF 16 at 14. But the state court judge in this case convicted Mr. Saidi of the stolen property charge after Mr. Saidi agreed he violated Pennsylvania Law. *See* ECF 33-8.

[71] ECF 33-8 at 2 (using the pagination assigned by the CM/ECF docketing system); ECF 33-9 at 3.

[72] ECF 16 at 7–8.

[73] *Weaver v. Beveridge*, 577 F. App'x 103, 105 (3d Cir. 2014).

[74] *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 281 n.1 (3d Cir. 2006) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 580 (3d Cir. 1996)).

[75] 91 F.3d 573, 580 (3d Cir. 1996) (first quoting *Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993); then citing RESTATEMENT (SECOND) OF TORTS § 660 cmt. c (AM. L. INST. 1977); and then citing *Davis v. Chubb/Pacific Indem. Grp.*, 493 F.Supp. 89, 92 (E.D.Pa.1980)), *abrogation on other grounds recognized in Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir. 2000). However, our Court of Appeals in *Hilfirty* concluded there had been a favorable termination and reversed the district court's dismissal of Plaintiff Miller's malicious prosecution claim because Plaintiff Miller

15

herself "neither compromised with the prosecution to obtain her grant of nolle prosequi nor formally accepted the nolle prosequi in exchange for a release of future civil claims." *Id.* at 575. Rather, the compromise occurred between Plaintiff Miller's co-defendant and the prosecution, and Plaintiff Miller was simply a beneficiary of that agreement. *Id.* at 581.

[76] *Marable*, 176 F. App'x 281 n.1.

[77] *See Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014) (first quoting *White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010); then citing *Marable*, 176 F. App'x at 281 n.1).

[78] *See id.* Further, "a finding that [Mr. Saidi] was maliciously prosecuted would necessarily imply the invalidity of his conviction, which is prohibited by the Supreme Court's ruling in *Heck* [*v. Humphrey*]." *Id.* (first citing *Marable*, 176 F. App'x at 281; then citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The Supreme Court in *Heck* held "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484.

[79] *See Kossler*, 564 F.3d at 187 n.3 (declining to analyze whether defendants initiated the criminal proceeding because plaintiff failed to satisfy the favorable termination element), 194 ("We reiterate that district courts need not reach the probable cause element unless they first make a finding of favorable termination after examining whether the proceeding as a whole indicates the innocence of the accused with respect to the conduct underlying all of the charges.").